Your Honor, my name is Jeffrey Martinez, and I represent the petitioner Najib Egeh. After fleeing his home country of Somalia, Mr. Egeh spent five years in Ethiopia before using a fraudulent Ethiopian passport to enter the United States. This fraudulent entry is at the heart of the dispute between the government and Mr. Egeh. In the judge's decision, she states, Thus, even were the court to find this respondent a Bantu clansman, asylum would be denied in the exercise of discretion for his manner of entry. The judge denied asylum for his manner of entry. The government would like the court to believe that the judge's ruling was based on a separate issue regarding Mr. Egeh's clan membership. However, it's clear from the record that the overwhelming concern of the judge was that Mr. Egeh engaged in fraud in order to enter the United States  This is evidenced not only in the decision, but also in her statements during the hearing and in the denial of the motion to reconsider that Mr. Egeh filed. Could I ask one clarifying question at the outset? She also says that, and I want to get confirmation because your brief suggests that Egeh was correct, he is not claiming past persecution. His claim rests on fear of future prosecution or torture. Is that correct? That's correct, Your Honor. Thank you. During the hearing, after testimony completed, the judge first expressed where she was regarding Mr. Egeh's eligibility for asylum, and she immediately referenced the matter of Selim and the matter of Pula. She discussed the cases at length, and after several minutes, she concluded, if I were to say that the respondent was essentially barred as a matter of discretion from asylum because of his manner of entry, then we're looking at having to show there's a greater than 50 percent chance that something would happen. And then she goes on to discuss the more likely than not stand for withholding of removal. But her first impression was to deny Mr. Egeh for his manner of entry. Then in the denial of the motion to reconsider, which is not before the Court, but it gives a very detailed explanation of the previous oral decision, and she discusses at length the validity of Selim and Pula and her ability to deny Mr. Egeh as a matter of discretion. She states in no uncertain terms that that is the reason why she denied Mr. Egeh. She states, In its December 3, 2003 decision, which is before the Court currently, the Court denied asylum in the exercise of discretion, despite finding that Respondent had a well-founded fear of future persecution of Somalia. The Court denied relief because Respondent was not in the act of fleeing imminent persecution when he obtained fraudulent documents. Then she continued, The Court found authority for such exercise of discretion in case law precedence, and she goes and cites again the matter of Selim and the matter of Pula. She is completely silent regarding Mr. Egeh's Klan membership, even though this was a perfect opportunity for her to say that was the real basis for the decision, as the government alleges. But instead, she again states that she is denying Mr. Egeh for his manner of entry. At every opportunity, the judge gives every indication that this is the basis for her decision. But even not considering the statements of Mr. Egeh. Counsel, I read the Egeh decision, as you do, to be denying based on discretion in light of the entry on a false passport. But it seemed to me the Court did not solely rely on the false passport. The Court also discussed that he'd been in Ethiopia five years and wasn't fleeing immediate persecution. So it seems to me at the crux, the question is whether the Egeh's discussion is an answer to the question of whether or not Mr. Egeh has been in Ethiopia five years, and whether or not Mr. Egeh has been in Ethiopia five years. Is that a fair statement of the law? I think that's a fair statement of the law, but I don't think that's what the judge did, Your Honor, in this case. I think that in her consideration of the different factors that involved him to engage in this fraud in order to enter the United States is exactly the scenario that Pula stated it's withdrawing from, that the Board stated in Pula's withdrawing from Saleem, where in Saleem the Board stated that an individual could be denied asylum in the matter of discretion for the circumvention of orderly refugee procedures. And that's entirely what the judge's discussion is about, and that's what Pula said is no longer a viable decision. I hope that satisfies Your Honor's question. Well, I guess not completely, but I understand your position on it. Okay. And I thought the court didn't do a very good job of discussing all the factors, but D.I.J. didn't rely solely on the fraudulent passport. Like he also or she also talked about the time in Ethiopia. And so I'm trying to figure out what do we do in a case like that. Do we remand to the D.I.A. to make a full examination of the Pula factors? Or, you know, what's the remedy that you seek? Yes, Your Honor, I seek a remand to the Board to reconsider the case. There is a bar in the statutes for firm resettlement, and the Ninth Circuit has already ruled in Andre Alcyon and in 2004 in Mamouzian, which was decided subsequent to this case, that that bar is how the Congress has addressed the issue of firm resettlement. So the issues of whether or not he was resettled or that he spent time in Ethiopia, I think is more germane to that kind of determination by the judge. The other factors that she considers are just his manner of entry. It's a fraudulent passport that he spent time in Ethiopia, not a fraudulent passport, without having to plead persecution at that time. And that's why she, as a matter of discretion, was denied an asylum. And in a matter of Pula, the Board stated that the danger of persecution should outweigh all but the most extreme adverse factors. And that's what the judge did not do here, was that kind of weighing. Can I ask one question? Yes. She was also concerned about the failure of proof on his Bantu membership, since all of his claims are what he turns on as being a member of a minority tribe. The evidence that, for the record, when you look at it is the statement from the organization that screens for Somali immigrants, refugees. All it says on its face is that the questioning that they went through included a question that established they asked him, and the best I can draw from it is they asked him what tribe he was, and he said he was Bantu. There's nothing in the statement that would indicate that they did any independent evaluation of that other than accept his statement. Now, my understanding is that this went back, that there was a continuance from a prior hearing, and that there was or that in any event that there was some request from the IJ for verification of Somali identity as opposed to being focused on Bantu. Am I mistaken in that? Yes. There was no continuance in this case. Okay. So why was that, what was the impetus for that statement, and why wasn't it more forthcoming about the Bantu aspect, since that's critical to his whole claim of fear of future persecution? That's true, Your Honor. And Ms. Vega did request the judge for continuance in order to provide that information to the court, which the judge denied and didn't allow him to present the evidence that she said she needed in order to make that kind of determination. Okay. But the documentation that was provided, okay, all it says is from the Bay Area Somali community, it says, We carry a conversation with Mr. Ige, sorry I mispronounced it at the beginning, asking the following questions to ascertain that he is a native of Somalia. And then it says his date of birth, names of his mother and father, his tribe, which is Bantu clan membership. Now, that just says that that's the question they ask, presumably what they are relying upon, based on that limited statement, is that's what he says. But how does that suffice to establish that he is, in fact, Bantu? Well, Your Honor, that's a difficult question, because it goes into the whole genealogy and the determination of clan heritage in Somalia. And I can explain that to the court. But, you know. No, I know. But where's the evidence of that? That's what you wanted to put on through. Through the continuance request. Through the continuance. Sorry.  Counsel, Counsel, Judge Gould with a question. Your Honor, I understood the continuance request was to introduce evidence of discrimination against Bantus for what Bantus faced. But as to whether the petitioner is a Bantu, I guess I'm inclined to think he testified to that and there was no adverse credibility determination, so that his testimony alone perhaps is enough to establish he's a Bantu, absent an adverse credibility decision. Yes, Your Honor, you anticipated my response. I was just going to make that comment. This is a pre-Real ID Act case where without an explicit adverse credibility ruling, his testimony stands as the basis for the appellate review. And I consider his testimony very credible. And as far as the Ninth Circuit is concerned, that is what you have to consider in terms of deciding this petition. I also see that I'm out of time, so I want to try to reserve just a little bit before any kind of response is necessary. Thank you. All right. You're ready. You may please escort. My name is Andrew Oliveira. On behalf of the Respondent, Eric Holder, the Attorney General. He got entered in the United States from Ethiopia, claiming to be an Ethiopian. Once in the United States, he sought asylum on the basis that he's a Somali, specifically the Bantu clan. The immigration judge determined that he failed to establish his membership in that clan and accordingly denied asylum on that basis. There's no way. Counsel, I didn't see the where the I.J. said that. I saw the I.J. and I might have missed something. But I saw the I.J. saying that in discretion because of the fraudulent passport that he wouldn't be admitted. But I thought the I.J. expressly said that she couldn't make a decision whether he was a Bantu or not. Didn't find he was, didn't find he wasn't. What she found was, specifically page 71, she addressed that she could not find that he was a member of the Bantu clan. And without membership in the Bantu clan, he cannot establish that any harm would be on account of a protected ground, in this case, a particular social group. But, Counsel, she did not make a lack of credibility finding, did she? No, there is no explicit adverse credibility. So he says he's a Bantu. We have to accept that he's a Bantu. Well, the problem with that, Your Honor, is that the immigration judge made the finding that she, that she felt that he did not establish eligibility. However, they did not challenge that determination either before the board or this Court. So his, the statutory eligibility for asylum is not before this Court and is thus dispositive with respect to asylum, withholding of removal and cap protection. Accordingly, this Court need not address whether or not the denial of asylum as a matter of discretion was in fact an abuse of discretion because he failed to establish statutory eligibility for asylum withholding and cap protection. Now, exactly what did he present to the BIA in his brief? There really is nothing. And furthermore, in this. Well, there's got to be more than nothing in this brief to the BIA. Well, I'm trying to go. There is in fact a brief in this case. Yes, there is in fact a brief. Again, the brief focused solely, as does the brief before this Court, focused solely on the denial of asylum as a matter of discretion, does not address whether or not the immigration judge erred in finding that he did not establish Bantu clan membership. Well, she does say that even vis-à-vis Bantu, I'm going to deny it because he came into the country under false pretenses. That is correct. She does. And that's not a proper basis. You'll have to concede. Well, the Supreme Court in Cardozo-Fonseca approvingly cited a matter of Saleem and said that fraudulent entry is a proper basis for denying an asylum application as a matter of discretion. So we do not concede that her analysis is in fact. I'm not sure that they said that in Cardozo-Fonseca. They just cited it for another principle, I believe. They were explaining the differences between asylum and withholding. Yes. And they pointed to a matter of Saleem as a proper basis for denying an asylum application as a matter of discretion. But, again, as I point out, though, that this Court need not address that because Petitioner did not challenge the finding that he failed to establish statutory eligibility either before the Board or this Court. In fact, his brief is completely devoid of any mention of the immigration judge's determination that he failed to establish Bantu clan membership. And by failing to raise that claim. What page? Do you cite the page and the line of the IJ decision where you think the IJ said he didn't establish that he's a Bantu? I mean, the IJ said she couldn't make a finding on that. But, again, she, as Judge Fletcher said, she didn't make an adverse credibility determination. So where? What's the page and line that you're relying on? Okay. Page 71 of the administrative record, it would be page 15 of the immigration judge's decision. It's the third full paragraph. It's the first sentence of that paragraph, or it's the first two, actually. And it says, if, in fact, a Respondent could be found to be Bantu, the Court believes there would be at least 10 percent chance of such persecution if he were to return. However, the Court has not been able to make that factual determination, i.e., that he is a Bantu clan member. And because he could not establish that, he could not establish that any harm would be on account of a protected ground, which is essential for asylum and withholding. And because he's saying this because she thinks he hasn't proved that he's a Bantu. That is correct. But she's found him credible? There is no explicit adverse credibility finding. But again, because the Petitioner did not raise that claim to either the Board or this Court, that issue is not before the Court. And it is, of course, dispositive with respect to withholding and asylum and withholding. I'd like to address the request for a continuance briefly. At the end of the testimony, after the immigration judge summed up where she felt the case was, there was a request to supplement the record with additional background evidence as to the discrimination faced by the Bantu in Somalia. However, because the immigration judge's decision rested solely on whether or not he was a Bantu, there was no abuse of discretion. Furthermore, I would point out that the State Department's report indicates that there is, in fact, discrimination against the Bantu. And this evidence would be cumulative, and, of course, it doesn't address the key issue that the immigration judge relied on in denying the application. So just so I understand, to sum up, you are you have some argument about the manner aspect of the I.J.'s holding. But you say basically it doesn't make any difference because the I.J. found declined to make a finding that he established membership in a persecuted minority, the Bantu. Notwithstanding, she didn't make an explicit credibility finding. She said she refused to find affirmatively that he was a member of the Bantu tribe, that his claims for withholding of removal and for torture are all dependent on his being Bantu. Correct. Correct. Okay. And because he did not challenge in the BIA or here, you're saying, that she erred in refusing to find him a member of the Bantu, we don't get into the manner alternative holding, and we don't have to find any flaws with regard to the withholding of removal or torture because there's no factual predicate for it. That is, that he's a member of the Bantu. That is correct, Your Honor. That is our position. All right. If there are no further questions, we ask that this Court affirm the decision below. All right. Thank you. Thank you. Counsel, could you address the summation so we know, because it seems to turn on whether or not you've challenged Bantuism. Well, I disagree with that. Okay. I think that was the holding of the judge. I think what the judge's ruling said was, in essence, she need not make any finding regarding clan membership because it's not necessary for her to, because she's relying on her discretion to deny asylum as a matter of discussion for his manner of entry. I think that's clear. And every statement that she made in the decision is particularly clear in the denial of mission reconsider where she goes into detail. So I understand. And so you will agree that you did not challenge, before the BIA or here, whether or not he had established that he was a member of the Bantu. You are relying on the fact that she said, even if he were, I would exercise discretion to deny asylum based on his fraudulent document. But, my Lord, she, I'm sorry, could you repeat that? Well, I'm trying to understand where Bantuism comes in this case. You know, a lot of what she talks about in her opinion is, I don't believe he's established himself as a Bantu. Without being a Bantu, he is not subject, there's no evidence of him being subject to past or future persecution. He has to not only be Somali, as I understand the posture of this case, but he has to be Bantu Somali. And if you haven't challenged her finding or declination of the finding that he was Bantu, the factual predicate for his, any of his claims, regardless of how he came in, would be missing, would they not? Your Honor, my position is that she never makes any factual finding for the Respondent to challenge the Board of Immigration Appeals. In the brief for the Board, Mr. Age did argue that he was eligible for asylum. There is a well-founded fear section in that brief that argues that. Based on what? What's the, what is it that he is? Based on his clan membership, that he is Bantu. And without any kind of explicit, absolute credibility finding, there was nothing for Mr. Age for him to argue against that she had made a finding that he is not Bantu and not eligible for asylum. His testimony about his Bantu clan membership was credible. So I would like to request a quick reminder case. All right. Thank you. All right. The case argued is submitted. And we'll take next. Sopanova v. Holder.
judges: Fletcher, B., Fisher, Gould